Matthew J. CRUSAN, et al.,[1] Plaintiffs,

v.

UNITED STATES, Defendant,

Kathy L. Federico, et al.,[1] Plaintiffs,

v.

United States, Defendant.

Nos. 07–434C, 08–44C.

United States Court of Federal Claims.

March 24, 2009.

1. The two decisions on the defendant's motions for partial judgment on the pleadings in *Crusan* and *Federico* are joined in this Opinion for administrative ease because the issue raised in both cases is the same, for all plaintiffs, and the parties are represented by the same counsel. The two cases have not been formally consolidated or joined and damages on the remainder of the cases have been addressed individually.

Jules Bernstein, Bernstein & Lipsett, P.C., Washington, D.C., for the plaintiffs. Linda Lipsett, Bernstein & Lipsett, P.C., Washington, D.C. and Edgar N. James, James & Hoffman, P.C., Washington, D.C., of counsel.

Shalom Brilliant, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Jeanne E. Davidson, Director and Todd M. Hughes, Deputy Director, Commercial Litigation Branch.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Before the court are the defendant's motions for partial judgment on the pleadings in the two above-captioned cases. The defendant brought its motions in both cases pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims (RCFC). The defendant seeks to dismiss that part of each of the plaintiffs' claims for compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2000), for time spent commuting between home and work in government-owned vehicles (hereafter, the "driving time" claims). Plaintiffs in the two above-captioned cases are current and former Diversion Investigators employed by the United States Drug Enforcement Agency ("DEA"). Plaintiffs in *Crusan v. United States*, Case No. 07–434C, include Matthew J. Crusan, Robert J. Donnelly, David M. Hargroder, and Sharon A. Lynn, all of whom have been employed by the DEA since at least 2004. Plaintiffs in *Federico v. United States*, Case No. 08–44C, include Kathy L. Federico and James W. Graumlich, both of whom have been employed by the DEA since at least 2005. *Crusan* and *Federico* are two of a large number of similar cases brought in this court, on behalf of numerous plaintiffs, mostly filed by the same plaintiffs' counsel. The cases have been assigned to various judges, as discussed below. The larger set of cases are filed against the DEA, as well as multiple other government agencies, by government employees seeking compensation under the FLSA for allegedly having been improperly classified as FLSA exempt by their employers and, therefore, denied compensation to which FLSA non-exempt employees can claim entitlement. Many of the cases, including the two above-captioned cases, include the "driving time" claims.[2]

On June 27, 2007 and January 18, 2008, plaintiffs in *Crusan* and *Federico*, respectively, filed virtually identical complaints in this court alleging that since at least 2004 for the *Crusan* plaintiffs and at least 2005 for the *Federico* plaintiffs, the defendant "wrongfully and wilfully" violated the FLSA and various sections of Title 5 of the United States Code.

---

2. At publication, the plaintiffs' counsel appears to have filed over 250 FLSA cases in the United States Court of Federal Claims; some have been consolidated. Pursuant to RCFC 40.2(b), the plaintiffs' counsel has filed notice indicating that at least 58 of the cases are indirectly related to *Adams v. United States*, 471 F.3d 1321, 1326 (Fed.Cir.2006), *reh'g and reh'g en banc denied*, 219 Fed.Appx. 993 (Fed.Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 866, 169 L.Ed.2d 723 (2008). *Adams v. United States* originated in, and was first decided in, the United States Court of Federal Claims, 65 Fed.Cl. 217 (2005), adversely to the plaintiffs on the driving time claims. The United States Court of Appeals for the Federal Circuit affirmed the lower court decision, as is discussed below.

According to the plaintiffs complaints, the defendant: 1) "withheld overtime compensation due plaintiffs and others similarly situated by failing and refusing to pay them in accordance with FLSA for hours worked in excess of forty each week. Such overtime hours include but are not limited to hours during which defendant and its officers and agents directed and/or suffered or permitted plaintiffs to work without paying them any compensation whatsoever, including travel, training and other work performed by plaintiffs on defendant's behalf"; 2) "withheld overtime compensation due such plaintiffs and others similarly situated by failing and refusing to pay them in accordance with FLSA for hours worked in excess of forty each week, and otherwise depriving them of overtime compensation to which they were entitled under FLSA, or otherwise"; 3) "fail[ed] to compensate plaintiffs with FLSA overtime for FLSA travel status overtime hours, for regularly scheduled and administratively uncontrollable overtime, hazardous duty pay, for training performed outside their regular tours of duty, and otherwise depriving them of overtime compensation to which they were entitled under FLSA, or otherwise"; and 4) "denied plaintiffs such overtime compensation by failing to treat the foregoing periods of leave, holidays and paid absences as 'time worked' for the purposes of computing such FLSA overtime compensation."

The plaintiffs state that they "seek to recover from the defendant back pay, liquidated damages, interest, attorneys fees and costs pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*" The parties have resolved and filed joint stipulations of dismissal on all of the other remaining claims in *Crusan* and *Federico.* By agreement of the parties, the only issue before the court at this time in both cases is whether or not the plaintiffs are entitled to compensation for their "driving time" to and from work in government-owned vehicles.

**3.** RCFC 12(c) and Fed.R.Civ.P. 12(c) provide that: "After the pleadings are closed—but early

## DISCUSSION

With respect to the "driving time" issue, pursuant to RCFC 12(c), defendant moves for partial judgment on the pleadings. The court's rule, RCFC 12(c), is identical to Rule 12(c) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.).[3] It is derived from the common law practice of demurrer, which permitted either party, at any point in the proceeding, "to demur to his [or her] opponent's pleading and secure a dismissal or final judgment on the basis of the pleadings," and "could be used to search the record and raise procedural defects, or it could be employed to resolve the substantive merits of the controversy as disclosed on the face of the pleadings." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.2008) (discussing Fed.R.Civ.P. 12(c)). Rule 12(c) pertains only to the function of "disposing of cases on the basis of the underlying substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings." *Id.* The United States Court of Appeals for the Federal Circuit has stated that "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the [moving] party is entitled to judgment as a matter of law." *Forest Labs., Inc. v. United States,* 476 F.3d 877, 881 (Fed.Cir.2007) (citing *New Zealand Lamb Co., Inc. v. United States,* 40 F.3d 377, 380 (Fed.Cir.1994)). The same legal standard is applied to evaluate a Rule 12(c) motion for judgment on the pleadings as is applied for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Cary v. United States,* 552 F.3d 1373, 1376 (Fed.Cir.), *reh'g denied* (Fed.Cir.2009); *see also Peterson v. United States,* 68 Fed.Cl. 773, 776 (2005). When deciding a motion for judgment on the pleadings based on the merits of the complaint and the answer submitted by the parties, the court may review "the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the ... court will take judicial notice." 5C Wright & Miller, *Federal Prac-*

enough not to delay trial—a party may move for judgment on the pleadings."

tice and Procedure § 1367 (2008). When a defendant moves for judgment on the pleadings, the court "must assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant...." *Owen v. United States,* 851 F.2d 1404, 1407 (Fed.Cir.1988); *see also Hamilton v. United States,* 85 Fed.Cl. 206, 210 (2008) (" '[E]ach of the well-pled allegations in the complaint[ ] is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs.' " (quoting *Atlas Corp. v. United States,* 895 F.2d 745, 749 (Fed.Cir.) (brackets in original), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990))). Although the facts are to be construed in favor of the plaintiff, the "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citations and footnote omitted).[4]

After the defendant filed its motions for partial judgment on the pleadings on the "driving time" issue, the plaintiffs responded and the defendant replied. Subsequent to this exchange, the plaintiffs filed a "Motion for Leave to File Supplemental Authority and Supplemental Authority," offering for consideration the 1974 United States Supreme Court decision, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and the prior 1957 Supreme Court decision quoted in the *Scheuer* case, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As support for the plaintiffs' position that the complaints should survive the defendant's motions, the plaintiffs' counsel quoted from *Scheuer* as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is

very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. 1683 (emphasis added).

The court finds plaintiffs' supplemental submission curious, and not particularly helpful. The "literal terms" of *Conley* were abrogated by the majority opinion of the United States Supreme Court in the 2007 case of *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 561–63, 127 S.Ct. at 1969. In *Twombly,* the Supreme Court notes:

> [T]here is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough.... [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *See Sanjuan [v. Am. Bd. of Psychiatry and Neurology, Inc.],* 40 F.3d [247, 251 (7th Cir.1994), *as amended on denial of reh'g* (7th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996), *reh'g denied,* 518 U.S. 1034, 116 S.Ct. 2582, 135 L.Ed.2d 1096 (1996) ] ("once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.' ").... *Conley,* then, described the breadth of opportunity

---

**4.** For ease of reference, this court, as did the defendant, will cite to the case as *Twombly.*

to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.

*Bell Atlantic Corp. v. Twombly,* 550 U.S. at 562–63, 127 S.Ct. at 1969, 167 L.Ed.2d 929 (2007) (additional citations omitted); *see also Wright v. United States,* 81 Fed.Cl. 369, 374 n. 2 (2008) ("*Twombly* discredits not only *Conley,* but the venerable *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), insofar as *Scheuer* relied on *Conley's* formulation of the standard and stood for the proposition that the complaint should not be dismissed unless plaintiff can prove no set of facts which would entitle him to recover.").

█ The defendant in *Crusan* and *Federico* not only correctly argues that *Twombly* discredits the plaintiff's citation to the *Scheuer* and *Conley* standard, but also asserts that even if *Scheuer* and *Conley* had not been discredited, plaintiffs would not be entitled to relief because "[p]laintiffs' complaint allege[d] no facts concerning plaintiffs' home-to-work driving, much less facts that might distinguish their driving claims from the driving claims that were held not compensable, [by the United States Court of Appeals for the Federal Circuit] in *Adams v. United States,* 471 F.3d 1321 (Fed.Cir.2006), *reh'g and reh'g en banc denied,* 219 Fed. Appx. 993 (Fed.Cir.2007), *cert. denied,* — U.S. ——, 128 S.Ct. 866, 169 L.Ed.2d 723 (2008) and in *Bobo v. United States,* 136 F.3d 1465 (Fed.Cir.1998)."

The plaintiffs have the burden to establish that their "driving time" claim is compensable under the FLSA and not subject to an exception in the statute, including the Portal–to–Portal Act of 1947, Pub.L. No. 80–49, 61 Stat. 84 (codified at 29 U.S.C. §§ 251–262 (2000)), which amends the FLSA, or exceptions contained in provisions of the regulations interpreting the FLSA. *See Adams v. United States,* 471 F.3d at 1326 ("[T]he plaintiffs in this case had the burden of showing that their drive time was compensable work for FLSA purposes and of showing that it does not fall into the set of activities excluded from the definition of compensable work by the Portal–to–Portal Act as interpreted by our precedent." (discussing and endorsing the standard articulated in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *reh'g denied,* 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946))); *see also Forbes v. United States,* 84 Fed.Cl. 319, 321 (2008), *appeal docketed,* No. 2009–5030 (Fed.Cir. Dec. 19, 2008); *Abbey v. United States,* 82 Fed.Cl. 722, 727 (2008).

The FLSA requires that employers compensate employees for all hours worked. *See* 29 U.S.C. § 207.

The FLSA was enacted to "give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of "overwork" as well as "underpay." ' "

*Kavanagh v. Grand Union Co., Inc.,* 192 F.3d 269, 271 (2d Cir.1999) (quoting *Barrentine v. Arkansas–Best Freight Sys. Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (emphasis and alteration in original) (quoting *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937)), *reh'g denied,* 317 U.S. 706, 63 S.Ct. 76, 87 L.Ed. 563 (1942))). If an employee qualifies for FLSA coverage and does not fall under an exemption, he or she is entitled to compensation pursuant to the FLSA. *See, e.g.,* 29 U.S.C. § 213. Furthermore, the FLSA requires that employees covered by the FLSA, who engage in a workweek longer than forty hours, be compensated for "employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). An employer's failure to abide by FLSA standards will result in employer liability. 29 U.S.C. § 216.

In 1947, Congress passed the original Portal–to–Portal Act, 29 U.S.C. §§ 251–262, which amended the FLSA, and included a provision that employers are not required to compensate employees for time spent traveling to and from work. *See* 29 U.S.C. § 254(a). The Portal–to–Portal Act was enacted by Congress as a response to the Unit-

ed States Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), in which, according to the Congress, the Supreme Court broadly interpreted the FLSA "in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation upon employers. . . ." 29 U.S.C. § 251(a) (congressional findings and declaration of policy); *see also Adams v. United States*, 471 F.3d at 1325; *Bobo v. United States*, 37 Fed.Cl. 690, 692 (1997), *aff'd*, 136 F.3d 1465 (Fed.Cir.1998). The Portal–to–Portal Act was further amended by the Employee Commuting Flexibility Act of 1996, Pub.L. No. 104–108, § 2102, 110 Stat. 1755, 1928 (1996). This section was added to the Portal–to–Portal Act " 'to clarify that otherwise non-compensable commuting to work is not compensable merely because the employee uses his employer's vehicle.' " *Adams v. United States*, 65 Fed.Cl. at 224–25 (quoting *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1117 (10th Cir.1999) (discussing legislative history of the FLSA and amendments thereto)), *aff'd*, 471 F.3d 1321.

Specifically, the Portal–to–Portal Act now states:

**(a) Activities not compensable**

Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh–Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon–Davis Act [40 U.S.C.A. § 276a et seq.], on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

The defendant's present motions for partial judgment on the pleadings are based on two precedential decisions decided initially by the United States Court of Federal Claims and affirmed by the United States Court of Appeals for the Federal Circuit, *Adams v. United States*, 65 Fed.Cl. 217 (2005), *aff'd*, 471 F.3d 1321 (Fed.Cir.2006), *reh'g and reh'g en banc denied*, 219 Fed. Appx. 993 (Fed.Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 866, 169 L.Ed.2d 723 (2008), and *Bobo v. United States*, 37 Fed.Cl. 690 (1997), *aff'd*, 136 F.3d 1465 (Fed.Cir. 1998). The defendant argues that this court must find, as a matter of law, that, based upon the pleadings, the defendant is entitled to judgment in its favor on the issue of the plaintiffs' "driving time" claims, because the *Adams* and *Bobo* Federal Circuit decisions are binding precedent when cases are reviewed in the United States Court of Federal Claims, and both cases found that time solely spent driving between home and work in a government vehicle is not compensable under the FLSA, as amended.

The United States Court of Federal Claims is required to follow the precedent of the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, and the predecessor court to the

Federal Circuit, the United States Court of Claims. *See South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982); *see also Coltec Indus., Inc. v. United States,* 454 F.3d 1340, 1353 (Fed.Cir.) (citing *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1290 n. 3 (Fed.Cir. 1999), *reh'g en banc denied* (Fed.Cir.2000)), *reh'g denied* (Fed.Cir.2006), *cert. denied,* 549 U.S. 1206, 127 S.Ct. 1261, 167 L.Ed.2d 76 (2007); *Passamaquoddy Tribe v. United States,* 82 Fed.Cl. 256, 262 (2008), *appeal docketed,* No. 08-5110 (Fed.Cir. Aug. 25, 2008). When the United States Supreme Court or the United States Court of Appeals for the Federal Circuit issues a decision, that decision is binding on the United States Court of Federal Claims, unless the Court of Federal Claims Judge finds that the facts presented are distinguishable from the facts in the case decided by the higher court, or, alternately, that the applicable law has changed. *See Strickland v. United States,* 423 F.3d 1335, 1338 n. 3 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2005).

In *Bobo,* the plaintiffs were a group of Immigration and Naturalization Service (INS), border patrol, agent, canine handlers, whose "principal duties include[d] attending to immigration-related calls requiring the aid of their dogs...." *Bobo v. United States,* 136 F.3d at 1466. The agents were required to have their dogs reside with them and were provided specially equipped vehicles by the INS to transport their dogs between their homes, the border patrol headquarters and other work locations. *Id.* In addition, the agents had to make periodic stops to allow the dogs to exercise or for a "necessary" break. *Id.* at 1466-67. The agents were not allowed to make personal stops and were required to wear their official uniforms while driving their vehicles. *Id.* at 1467. Although the INS agents were not paid for their commuting time in government vehicles that were specially-equipped to transport the canines, they were paid an hour each day for the time spent taking care of the dogs. *Id.* The plaintiffs also were required by their employer to perform additional duties while driving, such as monitor their vehicle radios, report mileage, be on the lookout for suspicious activity, and refrain from personal errands or detours. *Id.*

The INS agents in *Bobo* brought suit against the government seeking compensation for their commuting time pursuant to the FLSA. *Id.* The United States Court of Federal Claims granted summary judgment in favor of the government and the United States Court of Appeals for the Federal Circuit affirmed, based upon the fact that the required duties of the plaintiffs while driving in their government issued cars were *de minimis* (i.e., of "infrequent [and] trivial aggregate duration, and administratively impracticable to measure."). *Id.* at 1468. The Federal Circuit in *Bobo* concluded that, "as a matter of law, they [the restrictions on the INS agents] do not give rise to a valid or even triable claim for compensation under the FLSA." *Id.* at 1468. The Federal Circuit found:

> Viewing the pleadings and submissions in the light most favorable to the INS Agents, we accept as true that the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities. However, the burdens alleged are insufficient to pass the *de minimis* threshold.

*Id.*[5]

In *Bobo,* the Federal Circuit also offered guidance regarding the *de minimis* test. First, the *Bobo* court quoted the decision of the United States Court of Appeals for the Second Circuit in *Reich v. New York City Transit Authority,* as follows:

> The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.... The ability of

---

**5.** The *Bobo* trial court concluded that plaintiffs went "too far" when they claimed that "their constant state of vigilance while commuting converts their commutes into compensable work.

In short, plaintiffs are contending that they are required to drive with their eyes and ears open." *Bobo v. United States,* 37 Fed.Cl. at 699.

the employer to maintain records of such time expended is a factor. And, where the compensable preliminary work is truly minimal, it is the policy of the law to disregard it.

*Bobo v. United States,* 136 F.3d at 1467 (quoting *Reich v. New York City Transit Auth.,* 45 F.3d 646, 650 (2d Cir.1995)). The plaintiffs in *Crusan* and *Federico* mention the *Reich* case in a footnote in their opposition brief, but fail to apply the *Reich de minimis* standard to the facts presented by their claims for time solely spent driving between home and work in a government-owned vehicle.

The Federal Circuit, in *Bobo,* also discussed the factors articulated by the Ninth Circuit in *Lindow v. United States,* 738 F.2d 1057, 1063 (9th Cir.1984), regarding whether the work underlying a compensation claim should be considered *de minimis* by a trial court. Those factors include " '(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.' " *Bobo v. United States,* 136 F.3d at 1468 (quoting *Lindow v. United States,* 738 F.2d at 1063). Despite the general assertions made by the plaintiffs in *Crusan* and *Federico* that they are entitled to "driving time" compensation, no specific facts have been offered by the plaintiffs. Without further specific allegations by plaintiffs' counsel in the complaints filed with this court, plaintiffs have not demonstrated that their "driving time" claim is compensable or passes the *de minimis* tests set out in *Reich* and *Lindow.*

Subsequently, in *Adams v. United States,* the Federal Circuit relied on the reasoning in *Bobo* to review claims brought by law enforcement officers with the United States Secret Service, United States Customs and Border Protection (formerly United States Customs Service), the Internal Revenue Service, the Bureau of Alcohol, Tobacco and Firearms, and the Drug Enforcement Agency. *Adams v. United States,* 471 F.3d at 1323. In order to support their "driving time" claims, the plaintiffs in *Adams* alleged that, as a condition of their employment, they were required to drive from home to work in

government-owned vehicles in order to respond rapidly to emergency calls at any time as part of "their employers' law enforcement missions." *Id.* The *Adams* plaintiffs were required to have with them their law enforcement weapons and equipment and to have on monitoring equipment during their drives. *Id.* Like the plaintiffs in *Bobo,* the plaintiffs in *Adams* were not allowed to run personal errands, but were required to go directly from home to work and back again without unauthorized stops. *Id.* In *Adams,* the court indicated that its decision "address[ed] only plaintiffs' basic argument: that their normal commutes, without more, constitute[d] compensable work." *Id.* at 1323 n. 1.

Relying on the Portal–to–Portal Act, the Federal Circuit in *Adams* found that the plaintiffs' commuting time was not compensable because the activities conducted for the benefit of the plaintiffs' agency employers could not overcome the *de minimis* threshold articulated in *Bobo. Id.* at 1328. The court in *Adams* quoted the Portal–to–Portal Act and concluded:

The Portal–to–Portal Act speaks specifically to vehicular travel:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). Therefore, merely commuting in a government-owned vehicle is insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving. The question in this appeal is whether the requirements and restrictions placed on plaintiffs' commutes rise to that level. *Id.* at 1325. The court also noted that:

the plaintiffs in this case had the burden of showing that their drive time was compen-

sable work for FLSA purposes and of showing that it does not fall into the set of activities excluded from the definition of compensable work by the Portal–to–Portal Act as interpreted by our [the Federal Circuit's] precedent.

*Id.* at 1326.

The Federal Circuit, therefore, affirmed the Court of Federal Claims' grant of judgment for the defendant in *Adams,* as a matter of law, because no distinctions advanced by the *Adams* plaintiffs were sufficient to persuade the court that there should be a different result from that previously reached in *Bobo. Id.* at 1328. As was the case in *Bobo* and *Adams,* the defendant's motions for partial judgment on the pleadings in the cases currently before this court pertain only to time solely spent driving between home and work. As stated in *Adams,* "[t]his case does not require us to decide what FLSA mandates in the particular instances when plaintiffs are actually called on to respond to an emergency or otherwise deviate from their normal commutes. We address only plaintiffs' basic argument: that their normal commutes, without more, constitute compensable work." *Adams v. United States,* 471 F.3d at 1323 n. 1.

In their responses to the defendant's motions for partial judgment on the pleadings, the plaintiffs in *Crusan* and *Federico* advance a number of arguments to attempt to distinguish their cases. Plaintiffs try to suggest that *stare decisis* does not apply and therefore, that the Federal Circuit's decision in *Adams,* adopting *Bobo,* is not dispositive of the issues presented in the current motions. Plaintiffs quote from *Avenues in Leather v. United States,* to assert that "the doctrine of *stare decisis* applies to only legal issues and not issues of fact." *Avenues in Leather v. United States,* 423 F.3d 1326, 1331 (Fed.Cir.2005). Plaintiffs claim that their cases are factually and legally distinguishable from the *Bobo* and *Adams* cases and, therefore, that plaintiffs should be entitled to go forward and demonstrate the factual basis of their "driving time" claims.

The plaintiffs' reference to *Avenues in Leather v. United States,* 423 F.3d at 1331, raises the uncontroversial and settled propo-

sition that precedential decisions of the United States Supreme Court or a federal appellate court within the trial court's circuit are binding upon the trial court. Given only the general allegations in the plaintiffs' complaints: that (1) "defendant and its officers and agents directed and/or suffered or permitted plaintiffs to work without paying them any compensation whatsoever, including travel," and that (2) defendant "fail[ed] to compensate plaintiffs with FLSA overtime for FLSA travel status overtime hours," no basis exists factually to distinguish the plaintiffs' claims from *Bobo* and *Adams.* As the defendant points out, "*Bobo* and *Adams* are neither distinguishable nor wrong. And, in the absence of any material factual distinctions, the result here must be the same as in *Bobo* and *Adams;* logically, application of the same law to indistinguishable facts must produce the same result." The defendant further states that "even if this Court believed that *Bobo* and *Adams* were wrong, it would still be bound by those decisions." (citing *Coltec Indus., Inc. v. United States,* 454 F.3d at 1353).

Undeniably, this court is bound by the holdings of the United States Supreme Court and the United States Court of Appeals for the Federal Circuit and cannot, as the plaintiffs wish, simply disregard the precedent found in *Bobo* and *Adams* when no material factual differences even have been alleged. *See Coltec Indus., Inc. v. United States,* 454 F.3d at 1353; *Passamaquoddy Tribe v. United States,* 82 Fed.Cl. at 261–62. As stated by the Federal Circuit:

> *Stare decisis* plays an important role "in preserving the rule of law and in ensuring that its evolution is not subverted by arbitrariness." *Wilson v. United States,* 917 F.2d 529, 537 (Fed.Cir.1990), [*opinion modified on denial of reh'g* (Fed.Cir.), *reh'g denied* (Fed.Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991)]. "*Stare decisis* in essence 'makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision.... It deals only with law, as the facts of each successive case must be determined by the

evidence adduced at trial.'" *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed.Cir.1993) (quoting 1B James Wm. Moore, Moore's Federal Practice, ¶ G401 (2d ed.1993)), [*reh'g denied, in banc suggestion declined* (Fed.Cir.1993), *cert. denied*, 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994)]. A prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en banc. Sacco v. Dep't of Justice*, 317 F.3d 1384, 1386 (Fed.Cir.2003) (citing *Newell Co. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.Cir.1988), [*reh'g denied* (Fed.Cir.), *suggestion for reh'g en banc declined* (Fed.Cir.), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989)]). *Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed.Cir.) (brackets added), *reh'g and reh'g en banc denied* (Fed.Cir. 2008).

As part of their further attempt to oppose the defendant's motions for partial judgment on the pleadings and to distinguish the facts in the cases before the court, the plaintiffs make a variety of additional arguments. The plaintiffs argue that because the plaintiffs in *Adams* were not Diversion Investigators, the claims of the current plaintiffs, who are, were not addressed by *Adams*. It is not clear in *Adams*, from either the Federal Circuit Opinion, 471 F.3d at 1321, or the trial court Opinion, 65 Fed.Cl. at 217, whether the many plaintiffs in *Adams* included any Diversion Investigators or only "agents" and other series of employment. It is clear that the plaintiffs in *Bobo* were identified as "border patrol agent canine handlers." *Bobo v. United States*, 136 F.3d. at 1466. Regardless, the issue of compensation for time solely spent driving between home and work in government-owned vehicles was squarely before the *Adams* and *Bobo* courts. There are no facts alleged by the current plaintiffs in their complaints by which to distinguish their situations from the existing precedent set in *Adams* and *Bobo*.

Plaintiffs also try to suggest that, as Diversion Investigators, their driving between home and work constituted "field work," was undertaken for an official purpose, and, thus, should be compensable, citing 31 U.S.C. § 1344 (2000)[6] and 41 C.F.R. § 102–5.30 (2008).[7] The provisions at 31 U.S.C. § 1344, relied on by the plaintiffs for this argument, refer to funds available to the agency for the use of government-owned vehicles for an official purpose and how those funds can be utilized, but do not refer to the entitlement for compensation of individuals using a government-owned vehicle solely to commute between home and work. Moreover, the regulation is not inconsistent with either the relevant statutes or previous Federal Circuit decisions. *See Adams v. United States*, 471 F.3d at 1327–28. The plaintiff's reliance on the term "field work," as defined in 41 C.F.R. § 102–5.30, refers to work that is

---

**6.** **§ 1344. Passenger carrier use**

(a)(1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.

(2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is—

(A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section, or

(B) essential for the safe and efficient performance of intelligence, counterintelligence, pro-

tective services, or criminal law enforcement duties,

is transportation for an official purpose, when approved in writing by the head of the Federal agency.

31 U.S.C. § 1344.

**7.** **§ 102–5.30 What definitions apply to this part?**

* * *

Field work means official work requiring the employee's presence at various locations other than his/her regular place of work. (Multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

41 C.F.R. § 102–5.30.

conducted outside of an employee's regular place of work, and does not address normal, previously unapproved, time spent commuting to and from work, even in a government vehicle. Nowhere in the plaintiffs' complaints are there any allegations that the "driving time" at issue met the criteria in the statute, was approved or met the other requirements of the applicable statutes or regulations. Although perhaps not dispositive on the driving time issue, the court notes that a portion of 31 U.S.C. § 1344, not cited by the plaintiffs, states:

> For purposes of any determination under chapter 81 of title 5 or chapter 171 of title 28, an individual shall not be considered to be in the "performance of duty" or "acting within the scope of his or her office or employment" by virtue of the fact that such individual is receiving transportation services under this subsection. Nor shall any time during which an individual uses such services be considered when calculating the hours of work or employment for that individual for purposes of title 5 of the United States Code, including chapter 55 of that title.

31 U.S.C. § 1344(g)(4).

The plaintiffs in *Adams*, who were represented by the same counsel as are the plaintiffs currently before this court, similarly have attempted to distinguish their particular facts from the facts earlier presented in *Bobo*. In *Adams*, the Federal Circuit found that the plaintiffs were unable to articulate material facts to distinguish their "driving time" claims from those of the plaintiffs in *Bobo*. *See Adams v. United States*, 471 F.3d at 1328. Subsequently, six Judges of this court, not including the undersigned in *Crusan* and *Federico*, in ten prior cases similar to each other and the instant cases, each presented with the "driving time" issue, have found in favor of the defendant United States and followed the *Bobo* and *Adams* precedents. Not one of the Judges of this court, when presented with the issue, has ruled in favor of the plaintiffs or found any basis to distinguish the plaintiffs' cases from *Bobo* and *Adams*. *See Garner v. United States*, 85 Fed.Cl. 756, 760–61 (2009); *Stocum v. United States*, 85 Fed.Cl. 217, 223–24 (2008); *Hamilton v. United States*, 85 Fed.Cl. at 213; *Antonsen v. United States*, 84 Fed.Cl. 760, 766–68 (2008); *Boyer v. United States*, 84 Fed.Cl. 751, 757–59 (2008); *Wolfen v. United States*, 84 Fed.Cl. 662, 668–70 (2008); *Morgan v. United States*, 84 Fed.Cl. 391, 393–95 (2008); *Forbes v. United States*, 84 Fed.Cl. at 326; *Redd v. United States*, 83 Fed.Cl. 589, 593 (2008); *Easter v. United States*, 83 Fed.Cl. 236, 243 (2008), *appeal docketed*, No. 08–5187 (Fed.Cir. Sep. 30, 2008).[8] The Judges in each of these cases have disposed of the plaintiffs' "driving time" claims in favor of the defendants on dispositive motions.[9] Several of these cases included plaintiffs who, like the instant plaintiffs, were DEA Diversion Investigators. *See Garner v. United States*, 85 Fed.Cl. at 757–58; *Stocum v.*

---

8. *Hamilton* and *Stocum* were decided by Judge Margaret M. Sweeney; *Boyer, Wolfen,* and *Antonsen* were decided by Judge Lynn J. Bush; *Forbes* was decided by Judge Charles F. Lettow; *Morgan* was decided by Judge George W. Miller; *Redd* was decided by Judge Christine O.C. Miller; *Garner* and *Easter* were decided by Chief Judge Emily C. Hewitt. The court notes that in *Adams* and each of the repetitive cases in the United States Court of Federal Claims, listed above, as well as in the instant case, the plaintiffs were represented by the same counsel. Additionally, in the trial court, *Adams* was decided by Judge Lynn J. Bush and *Bobo* was decided by Judge Christine O.C. Miller.

9. The driving time claims were disposed of as follows: in *Garner* as an RCFC 12(c) motion for judgment on the pleadings; in *Hamilton* as an RCFC 12(c) motion for judgment on the pleadings; in *Stocum* as an RCFC 12(c) motion for judgment on the pleadings; in *Boyer* as an RCFC 12(c) motion for judgment on the pleadings; in *Wolfen* as an RCFC 12(c) motion for judgment on the pleadings; in *Antonsen* as an RCFC 12(c) motion for judgment on the pleadings; in *Forbes* as RCFC 56 cross-motions for summary judgment; in *Morgan* as an RCFC 12(c) motion for judgment on the pleadings; and in *Redd* as an RCFC 12(c) motion for judgment on the pleadings, however, by Order dated October 21, 2008, the court granted the plaintiff's motion for reconsideration to the limited extent of vacating the judgment insofar as it dismissed the entire case, rather than only the home-to-work driving claim. The court, however, reaffirmed its dismissal of the driving claim in *Redd*. *Easter* was decided as an RCFC 56 motion for summary judgment, because the plaintiffs offered evidence outside of the pleadings. The *Adams* and *Bobo* trial court Opinions were decided as RCFC 56 cross-motions for partial summary judgment.

*United States*, 85 Fed.Cl. at 219; *Hamilton v. United States*, 85 Fed.Cl. at 210; *Morgan v. United States*, 84 Fed.Cl. at 391; *Forbes v. United States*, 84 Fed.Cl. at 319; and *Redd v. United States*, 83 Fed.Cl. at 590. The *Adams* and *Bobo* holdings were applied in each case as binding precedent.

The plaintiffs also have asserted that the United States Supreme Court's decisions in *Long Island Care at Home v. Coke*, 551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) ("*Coke*"), and *National Cable Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) ("*National Cable*"), have "nullified" the Federal Circuit's reasoning in *Adams*, such that *Adams* does not control in the present cases. The plaintiffs' argument would similarly extend to *Bobo*. The plaintiffs contend that, as a result of these Supreme Court decisions, "it is the agency's regulation and interpretations that must be respected, deferred to, and applied by the courts, absent a finding by the court of 'unambiguous terms of the statute' that 'leave[ ] no room for agency discretion....'" The plaintiffs argue that "5 C.F.R. § 551.401 [[10]] of these long-standing OPM [Office of Personnel Management] Regulations, 'Hours of Work'" entitle the plaintiffs to compensation for their driving time, despite the holdings in *Bobo* and *Adams* that time solely spent driving to and from work in government-owned vehicles is FLSA noncompensible. The plaintiffs also argue that the *Adams* court erroneously relied on *Bobo* instead of on "OPM's longstand-

ing regulations at 5 C.F.R. § 551.422 (2008)," [11] which were promulgated before *Bobo* and *Adams*. According to the plaintiffs, "on their face these regulations require [the court] to declare plaintiffs' driving compensable under FLSA."

Although the plaintiffs contend that the OPM regulations found at 5 C.F.R. §§ 551.401 and 551.422(a)(2) entitle them to compensation in spite of *Adams* and *Bobo*, these regulations do not appear to be in contradiction with *Adams* and *Bobo*, nor do they automatically entitle the plaintiffs to FLSA compensation for time solely spent driving between home and work in a government owned vehicle. The provisions at 5 C.F.R. § 551.401 establish "Basic Principles," including that the time spent by an employee working for the benefit of, or under the control of, an agency is considered work. They do not address other regulations or court decisions which further develop that concept. Driving to and from work also can be distinguished from compensable overtime when an employee is "suffered or permitted" to continue work at the end of the shift, discussed and cited by the plaintiff in *Doe v. United States*, 372 F.3d 1347, 1361 n. 7 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2004), *cert. denied*, 544 U.S. 904, 125 S.Ct. 1591, 161 L.Ed.2d 277 (2005). The provisions at 5 C.F.R. § 551.422(a)(2) deal with time during which an employee is required to drive a vehicle or perform other work while driving. Again, the provisions do

10. **§ 551.401 Basic principles.**
(a) All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes:
(1) Time during which an employee is required to be on duty;
(2) Time during which an employee is suffered or permitted to work; and
(3) Waiting time or idle time which is under the control of an agency and which is for the benefit of an agency.
5 C.F.R. § 551.401.

11. **§ 551.422 Time Spent Traveling**
(a) Time spent traveling shall be considered hours of work if:
(1) An employee is required to travel during regular working hours;
(2) An employee is required to drive a vehicle or perform other work while traveling;

(3) An employee is required to travel as a passenger on a one-day assignment away from the official duty station; or
(4) An employee is required to travel as a passenger on an overnight assignment away from the official duty station during hours on nonworkdays that correspond to the employee's regular working hours.
(b) An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal "home to work" travel; such travel is not hours of work. When an employee travels directly from home to a temporary duty location outside the limits of his or her official duty station, the time the employee would have spent in normal home to work travel shall be deducted from hours of work as specified in paragraphs (a)(2) and (a)(3) of this section.
5 C.F.R. § 551.422.

not conflict with the holding in *Adams,* which deems time solely spent driving a government-owned vehicle between home and work FLSA noncompensible and requires the performance of "additional legally cognizable work while driving ... to compel compensation for the time spent driving." *Adams v. United States,* 471 F.3d at 1325. Moreover, the provisions at 5 C.F.R. § 551.422(b) specifically state that "normal 'home to work' travel" is not considered "hours of work." The plaintiffs have alleged no specific facts to support entitlement to compensation under the requirements of the regulations. Furthermore, neither Supreme Court case, *Coke* or *National Cable,* dealt with the "driving time" issue and, therefore, do not overrule binding Federal Circuit precedent on the precise issue presented.

In *Coke,* the United States Supreme Court was asked to determine which of two conflicting Department of Labor regulations applied to a domestic worker who provided companionship services to the elderly and infirm. *Long Island Care at Home, Ltd. v. Coke,* 551 U.S. at ——, 127 S.Ct. at 2345. The plaintiffs contend that *Coke* stands for the proposition "that courts are obligated to defer to regulations and interpretations of agencies entrusted to administer statutes, formulate policy and make rules 'to fill any gap left, implicitly, or explicitly, by Congress.'" (quoting *Long Island Care at Home v. Coke,* 551 U.S. at ——, 127 S.Ct. at 2345). Although the plaintiffs' citation to basic statutory/regulatory principles of interpretation in *Coke* is unremarkable (as was true regarding the plaintiffs' citations to *Avenues in Leather v. United States,* 423 F.3d at 1330–31, regarding *stare decisis* ), plaintiffs provide no rationale for the application of *Coke* to the present case.

The plaintiff in *Coke* brought suit for overtime wages under the FLSA and a New York State statute. *Long Island Care at Home, Ltd. v. Coke,* 551 U.S. at ——, 127 S.Ct. at 2345. The case involved the interpretation of the statutory terms, "domestic service employment," and "companionship services" and their application to plaintiff. *Id.* at ——, 2344–45. *Coke* did not interpret the statutes or regulations at issue or cited by the plain-tiffs in the present cases. The Supreme Court's guidance, regarding deference to the agency role of "gap filling" ambiguous terms in statutes articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984), does not create an inconsistency with the present cases from the conclusions arrived in *Bobo* and *Adams.* The plaintiffs' argument fails because *Adams,* which followed the reasoning in *Bobo,* was not decided pursuant to a failure of a court to defer to the OPM regulations cited by the plaintiffs or otherwise. *See Adams v. United States,* 65 Fed. Cl. at 239–40; *Adams v. United States,* 471 F.3d at 1328. Based on the allegations in the plaintiffs' complaints, the regulations cited by the plaintiffs do not provide entitlement to the relief sought.

In *Easter v. United States,* a factually similar case to the cases before this court, raising similar "driving time" claims, the court stated that:

> *Coke* dealt specifically with whether or not a certain DOL regulation (not involving commuting time) was valid and enforceable. The court does not perceive how the disposition of *Coke* has any bearing upon the substantive law of whether or not driving a[n] employer's vehicle between home and work constitutes compensable work under the FLSA and the Portal–to–Portal Act. *Coke* is simply not, as plaintiff suggests, a source of substantive change in the "law applicable to 'time worked' under [the] FLSA ... since *Adams [II]."*

*Easter v. United States,* 83 Fed.Cl. at 246 (quoting plaintiff Easter's opposition brief at 2) (brackets in original).

Plaintiffs also cite to *National Cable & Telecommunications Association v. Brand X Internet Services,* 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820, for the assertion that courts are obliged to "accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation," so long as the interpretation by the agency is reasonable. *Id.* at 980, 125 S.Ct. 2688 (quoting *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467

U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694). As part of this argument, the plaintiffs cite to OPM regulations, 5 C.F.R. § 551.401 and 5 C.F.R. 551.422(a)(2), quoted earlier. *National Cable* was decided prior to *Adams* and, therefore, cannot be considered as a subsequent Supreme Court decision, altering the rulings in *Adams* and *Bobo. See Strickland v. United States,* 423 F.3d 1335, 1338 n. 3 (Fed.Cir.2005) (citing *Bankers Trust N.Y. Corp. v. United States,* 225 F.3d 1368, 1372 (Fed.Cir.) (which addressed *subsequent* Supreme Court decisions as overruling binding precedent), *reh'g and reh'g en banc denied* (Fed.Cir.2000)). Therefore, were it on point, the case would not change the *Adams* precedent. *See Strickland v. United States,* 423 F.3d at 1338 n. 3; *see also Stocum v. United States,* 85 Fed.Cl. at 222 n. 4; *Hamilton v. United States,* 85 Fed.Cl. at 211 n. 4; *Antonsen v. United States,* 84 Fed.Cl. at 764 n. 5; *Boyer v. United States,* 84 Fed.Cl. at 755 n. 5; *Wolfen v. United States,* 84 Fed.Cl. at 666 n. 5. However, even if *National* Cable had been decided subsequent to *Bobo* and *Adams,* it would not impact *Bobo* and *Adams,* because *National Cable* also does not concern the FLSA or the issue of "driving time" claims pursuant to the FLSA. Rather, *National Cable* concerns a dispute following the FCC's determination that companies providing broadband internet services were not providing " 'telecommunications servic[e]' " within the meaning of the applicable statute. *Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.,* 545 U.S. at 973–74, 125 S.Ct. 2688 (quoting 47 U.S.C § 153(44) (2000) (brackets in original)). The *National Cable* Court reiterated the widely accepted principle that the judiciary should enforce the congressional intent of statutes and prevent arbitrary agency action, but should defer to reasonable agency interpretations of ambiguous statutory provisions. *Id.* at 981, 125 S.Ct. 2688.

In yet another attempt to defeat the defendant's motions to dismiss the "driving time" issue from the plaintiffs' cases, the plaintiffs devote several pages of their opposition briefs to the Federal Circuit's decision in *Billings v. United States,* 322 F.3d 1328 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied sub nom. Lotz v.* *United States,* 540 U.S. 982, 124 S.Ct. 465, 157 L.Ed.2d 372 (2003), and its application in *Angelo v. United States,* 57 Fed.Cl. 100 (2003). As with other cases cited by the plaintiffs in their attempt to overcome the inevitable application of the binding precedent set by *Adams* and *Bobo, Billings* does not concern "driving time" claims or the issue of "hours of work." Instead, *Billings* pertains to the resolution of inconsistent regulations issued by two different agencies with regard to executive exemption from FLSA coverage. *Billings v. United States,* 322 F.3d at 1333. To advance their position, the plaintiffs cite to a Department of Labor ("DOL") Field Operations Handbook provision relating specifically, and only to, ambulance drivers. Plaintiffs contend that, according to *Billings,* the OPM is required to "harmonize" its administration of the FLSA with that of the DOL. Therefore, according to the plaintiffs, this court must find consistently with the DOL's position on home-to-work driving under Wage and Hour Div., F.O.H. § 31d00(a)(5). This Wage and Hour provision, however, refers specifically to employees whose principal occupation is driving an ambulance, who are required as part of their job to drive an ambulance home at the end of the work day in order to allow them to respond to emergencies immediately, and who are compensated for all hours spent driving the ambulance as hours worked. The plaintiffs' arguments do not address why this court should follow the reasoning of an unrelated fact pattern, when binding case law on point exists as to the above-captioned cases, and the plaintiffs have provided no factual allegations to support a distinction from *Bobo* and *Adams.* The other "driving time" cases in the Court of Federal Claims, referenced above, similarly all have found that *Billings* fails to support the plaintiffs' argument that their time solely spent driving government-owned vehicles between home and work is compensable under the FLSA. *See Garner v. United States,* 85 Fed.Cl. at 768 ("The court does not perceive how the Federal Circuit's decision in *Billings* could control the outcome of this case."); *Easter v. United States,* 83 Fed.Cl. at 250 (same); *Stocum v. United States,* 85 Fed.Cl. at 226 (citing *Boyer* citing *Forbes, Morgan, Redd,* and *Easter); Hamil-*

ton v. United States, 85 Fed.Cl. at 215 (same); Antonsen v. United States, 84 Fed. Cl. at 764–65 (citing Forbes, Morgan, Redd, and Easter); Boyer v. United States, 84 Fed. Cl. at 756 (same); Wolfen v. United States, 84 Fed.Cl. at 667 (same); Morgan v. United States, 84 Fed.Cl. at 399 ("The material facts in this case are obviously different from those in Billings and are virtually identical to the material facts in Adams [ ]. Adams [ ] is binding precedent on this court, and the outcome here is controlled by the decision of the Federal Circuit in that case."); Redd v. United States, 83 Fed.Cl. at 594 ("Billings does not speak to [the issue of activities that exceed the de minimis threshold] and therefore has no bearing on Bobo or Adams."). In sum, each of the cases cited comes to the same conclusion and references preceding cases, including Bobo and Adams.

Another of the plaintiffs' unpersuasive arguments can be found in an attempt to rely on Singh v. City of New York, 524 F.3d 361 (2d Cir.2008), a nonbinding decision by the United States Court of Appeals for the Second Circuit that also does not concern claims for time solely spent driving between home and work in government-owned vehicles. In Singh, the plaintiffs were New York City fire inspectors within the Fire Alarm Inspection Unit ("FAIU"), who claimed FLSA compensation for their commutes between home and work, based on a requirement by their employer that they carry with them on their commutes FAIU issued briefcases containing fire inspection files. Singh v. City of New York, 524 F.3d at 365. The Second Circuit Court of Appeals applied a "predominant benefit standard" in determining that the Singh plaintiffs' commuting time was noncompensable under the FLSA, because their commuting time was "materially unaltered[12] and it cannot be said that the City is the predominant beneficiary of this time." Id. at 368–69. The court analogized the "predominant benefit test" to the de minimis test and stated that, "under either approach, when an employee is minimally restricted by an employer during a commute, such that his or her use of commuting time is materially unaltered, the commuting time will generally not be compensable under the FLSA." Id. at 369.

The Crusan and Federico plaintiffs assert, in their opposition briefs, that they can distinguish their situations from the facts presented in Singh. They allege that, "plaintiffs can and will demonstrate that their driving has been controlled and directed by defendant and has been engaged in exclusively for its benefit" and that "personal activities that might benefit the plaintiffs are prohibited." To support their argument, plaintiffs in the Crusan and Federico cases assert that engaging in personal activities, such as those the Singh plaintiffs engaged in on their commutes, would subject the current plaintiffs to punishment "under federal law by suspension and discharge." The plaintiffs assert that the Singh case "makes clear that the invocation of Adams by defendant is insufficient to support its motion for judgment on the pleadings, and that plaintiffs are entitled to litigate their driving claims herein unimpeded by the Federal Circuit's Adams decision." Once again, the plaintiffs' argument is flawed. Not only does Singh not assist the plaintiffs' general allegations, because no distinguishable facts have been alleged in the plaintiffs' complaints, but the plaintiffs cannot rely on a case from another Circuit, which is not binding on this court, when there exists clear case law on point in the Federal Circuit, which is binding precedent on this court.

## CONCLUSION

The only issue currently before this court on the defendant's motions is the issue of time solely spent driving a government-owned vehicle to and from work, which also was the precise issue decided by the United States Court of Appeals for the Federal Circuit in Adams and Bobo. Therefore, this court and the Crusan and Federico plaintiffs are obliged to follow the Federal Circuit decisions as binding, legal precedent. In the general allegations presented in the complaints currently before the court, the plaintiffs have not submitted facts even minimally

---

12. The Second Circuit noted that the plaintiffs in Singh were permitted to engage in personal activities during their commute such as "reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do." Singh v. City of New York, 524 F.3d at 368.

sufficient to distinguish the instant cases, or to pass the *de minimis* test outlined in *Adams* and *Bobo.* The plaintiffs have failed to plead sufficient facts in their complaints to establish a triable issue regarding the time spent commuting and, therefore, cannot withstand the defendant's motion for judgment on the pleadings on the issue. *See Bell Atlantic v. Twombly,* 550 U.S. at 562–63, 127 S.Ct. at 1969. Accordingly, the court must follow the *Adams* and *Bobo* binding, legal precedent. *See Coltec Indus., Inc. v. United States,* 454 F.3d at 1353.

Defendant's motions for judgment on the pleadings are granted. Plaintiffs' "driving time" claims, therefore, are dismissed from the complaints of all the plaintiffs in the *Crusan* and *Federico* cases included in the above-captioned complaint. There has been unanimous agreement in all the decisions issued in the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims on the "driving time" issue. The plaintiffs are urged to accept the decision of the five appellate Judges and now seven trial court Judges. As counsel also in *Adams,* the plaintiffs' current counsel should realize, perhaps reluctantly, that it is time to accept the uniform rulings of these courts. Just prior to publication of this opinion, the parties resolved all of the remaining claims and filed joint stipulations of dismissal of all claims but the "driving time" claims. The parties are to be commended for working together to resolve those outstanding issues. Accordingly, all claims contained in the plaintiffs' complaints in both *Crusan* and *Federico* are, hereby, dismissed. The clerk's office shall enter judgment consistent with this opinion, and dismiss in their entirety the *Crusan* and *Federico* cases.

**IT IS SO ORDERED.**